RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0019p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee*,

          *v.*                              Nos. 11-6303/6305

ERNEST CATCHINGS,
                    *Defendant-Appellant*.

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:09-cr-20376-1—Jon Phipps McCalla, Chief District Judge.

Argued: December 6, 2012

Decided and Filed: January 15, 2013

Before: MOORE and COOK, Circuit Judges; BERTELSMAN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Christian J. Grostic, KUSHNER & HAMED CO., L.P.A, Cleveland, Ohio, for Appellant in Cases 11-6303 and 11-6305. Stephen P. Hall, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee. **ON BRIEF:** Christian J. Grostic, KUSHNER & HAMED CO., L.P.A, Cleveland, Ohio, for Appellant in Case 11-6305. Stephen P. Hall, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee. Ernest Catchings, Memphis, Tennessee, pro se, in Case 11-6303.

_____

## OPINION
_____

KAREN NELSON MOORE, Circuit Judge. Relevant conduct under United States Sentencing Guidelines (U.S.S.G.) § 1B1.3 must be criminal conduct. If not, such

---

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

conduct is not relevant for the purpose of calculating a defendant's Guidelines range. In this appeal, we consider whether the district court included non-criminal conduct as relevant conduct when it sentenced defendant-appellant, Ernest Catchings.

Catchings pleaded guilty to one count of identity theft. In essence, Catchings fraudulently opened personal credit-card accounts using his former clients' personal information without their knowledge. When calculating the amount of loss pursuant to U.S.S.G. § 2B1.1(b)(1), district courts include losses stemming from relevant conduct under § 1B1.3. In this case, the district court included in its calculation losses stemming from credit cards that were in the name of U.S. Investments & Construction, a business that Catchings started with a friend. Catchings contends that the U.S. Investments & Construction credit cards were not obtained or used in violation of criminal law. Therefore, according to Catchings, the district court erred in including those losses when calculating his Guidelines range. We agree.

In addition to the arguments regarding his sentence, Catchings claims that his guilty plea was not entered knowingly or voluntarily and that the district court erred in denying his motion to withdraw his guilty plea. We disagree. Therefore, we **AFFIRM** the judgment of conviction of the district court and its denial of Catchings's motion to withdraw his guilty plea; however, we **VACATE** his sentence and **REMAND** the case for resentencing in accordance with this opinion.

## I. BACKGROUND

On September 23, 2009, a grand jury returned an indictment charging Catchings with using and attempting to use unauthorized access devices with intent to defraud, in violation of 18 U.S.C. § 1029(a)(2) and (b)(1). R. 1 (Indict. at 1–2) (Page ID #1–2). On November 4, 2010, another grand jury returned a superseding indictment that added a charge of knowingly possessing and using without lawful authority a means of identification of another person with the intent to commit forgery and fraudulent use of credit cards over $500, in violation of 18 U.S.C. § 1028(a)(7). R. 41 (Super. Indict. at 3) (Page ID #51). On November 15, 2010, Catchings pleaded guilty to the added charge

in the superseding indictment, and the government agreed to dismiss the first charge pursuant to a plea agreement.  R. 114 (Change of Plea Hr'g Tr. at 32) (Page ID #903); R. 51 (Plea Agreement at 1–2) (Page ID #63–64).

After pleading guilty, Catchings filed a motion to dismiss counsel and another motion to have new counsel appointed.  R. 53 (Mot. to Dismiss Counsel) (Page ID #69–71); R. 52 (Mot. for Appt. of Counsel) (Page ID #66–68).  Catchings's counsel also filed a motion to withdraw at Catchings's request.  R. 54 (Mot. to Withdraw as Counsel) (Page ID #72–74).  Catchings then decided that he wanted to proceed pro se with his counsel staying on as "elbow counsel."  R. 110 (Mot. Hr'g at 6) (Page ID #636).  The district court warned Catchings of the dangers of proceeding pro se, but ultimately allowed him to do so.  *Id.* at 6–9 (Page ID #636–639).

On February 8, 2011, two days prior to the first scheduled date of his sentencing hearing, Catchings filed a motion to withdraw his guilty plea.[1]  In that motion, Catchings asserted that his guilty plea was "unfairly obtained or given through ignorance, fear, or inadvertence."  R. 69 (Mot. to Withdraw Plea at 1) (Page ID #105).  Catchings also claimed that he was induced by his attorney to plead guilty "by the promise that prosecution would not oppose a bond hearing [a]nd [the] government would recommend to dismiss count 1 of the indictment."  *Id.*  He then filed a "Motion to Dismiss Elbow Counsel" and an addendum to his motion to withdraw his guilty plea that discussed his dissatisfaction with his counsel.  R. 72 (Mot. to Dismiss Elbow Counsel) (Page ID #110–12); R. 73 (Addendum to Plea Withdrawal) (Page ID #113–17).

Catchings's first scheduled date for sentencing was pushed back to March 11, 2011.  At that hearing, the district court denied Catchings's motion to withdraw his guilty plea because it was "untimely, and there's not been any indication that [his plea] was not knowingly and voluntarily entered."  R. 111 (3/11/2011 Sentencing Hr'g Tr. at 6) (Page ID #655).  Catchings decided at that time to reinstate his counsel to represent him fully, which the court accepted.  *Id.* at 24, 27–28 (Page ID #673, 676–77).  The court

---

[1]Catchings dated the motion January 18, 2011.

also granted Catchings's request to push back the date of his sentencing hearing so that his newly reinstated counsel could prepare. *Id.* at 24–27 (Page ID #673–76).

According to the Presentence Investigation Report ("PSR"), Catchings ran a business helping people obtain mortgages and later used his former clients' information fraudulently to obtain credit cards and to open utility accounts in their names. PSR ¶¶ 9–30 (listing the accounts, whose name they were in, and the losses sustained). The PSR details the monetary losses that were caused as a result of Catchings fraudulently opening cards and accounts. Included in those losses is $38,197.81 to Bank of America from cards opened in the name of "U.S. Investments & Construction."[2] *Id.* at ¶ 19. Catchings objected to the PSR's inclusion of the losses from the U.S. Investments & Construction credit cards because they were legitimate credit cards used for legitimate business transactions. R. 83 (Am. Def.'s Objections to Sentencing Factors at 2) (Page ID #456). U.S. Investments & Construction was a real-estate business started by Catchings and a former friend and client, Ronald McCoy. PSR ¶ 20. With the inclusion of the U.S. Investments & Construction credit cards, the PSR states that Catchings caused a loss that was greater than $70,000 but less than $120,000, resulting in a eight-level increase to Catchings's base offense level pursuant to U.S.S.G. § 2B1.1(b)(1)(E). PSR at ¶ 36.

At Catchings's final sentencing hearing on September 29, 2011, the district court heard testimony from Catchings's former business partner, McCoy. On direct examination, McCoy testified that he and Catchings obtained credits cards for the purpose of furthering their business, U.S. Investments & Construction, but that McCoy did not intend or authorize the cards to be used for any personal expenditures. R. 112 (9/29/2011 Sentencing Hr'g Tr. at 89–91) (Page ID #772–74). McCoy further testified that he did not authorize cash withdrawals to be made from the cards and that he had no notice of the charges that were made on the credit cards, for which he would not have given permission. *Id.* at 91–92 (Page ID #774–75). McCoy also stated that, when he

---

[2]Evidence of four specific charges to these cards was presented at sentencing: a payment of a cell phone bill, a purchase at Walgreens, and two online banking advances. R. 75-6 (Loss Statements at 80) (Page ID #411).

visited a property that he and Catchings purchased, people were upset with him because they were told that McCoy was not paying the mortgage and that McCoy was using drugs. *Id.* at 93 (Page ID #776). McCoy explained that this was simply untrue and that he gave money to Catchings to pay the mortgage. *Id.*

On cross examination, McCoy said that he relied on Catchings to "take care of everything" and that it was possible that McCoy signed papers to obtain the credit cards. *Id.* at 97–98 (Page ID #780–81). McCoy testified that he remembered a credit card, but he and Catchings never used it. *Id.* at 100 (Page ID #783). McCoy also said that both he and Catchings were responsible for purchasing supplies to make repairs on homes that they purchased and that Catchings was authorized to sign on behalf of U.S. Investments & Construction as president of the company. *Id.* at 99–101 (Page ID #782–84).

On redirect examination, McCoy said that it was not his intention to have the credit cards used at all; rather, McCoy testified that "to make the business strong, we needed the credit." *Id.* at 102 (Page ID #785). He then confirmed his earlier testimony that he had no knowledge of the purchases or cash withdrawals and that he did not authorize those transactions. *Id.* at 102–03 (Page ID #785–86).

The district court found:

> The testimony of Mr. McCoy was . . . persuasive and consistent with the government's theory. Mr. Catchings, it appears, was engaging in the activity of taking either information from good friends or people whom he could clearly overreach in the process of obtaining credit . . . . In 2007, [Catchings and McCoy] went into business. It was clear, however, they did not go into business for the purpose of providing Mr. Catchings with a way to pay his personal obligations. . . . Mr. McCoy was trusting and overly trusting in the case, but hindsight is 20/20. Our society doesn't require a person to have unusual suspicion of their friends, or even people they don't know well. There's generally a presumption that people will not engage in illegal conduct. . . . [McCoy] did not intend to obtain personal credit cards, and he testified to that effect. And while we might speculate that that might have occurred, we don't know. The witness clearly didn't intend to do that, and there's really no proof that he, in fact, did in any way intend to obtain credit cards for the defendant. . . . So really as to . . . Mr. McCoy, [his] testimony clearly supports the government's contention.

R. 112 (9/29/2011 Sentencing Hr'g Tr. at 131–33) (Page ID #814–16).

The district court then adopted the finding in the PSR that the loss amount was greater than $70,000 but less than $120,000, stating that "the court clearly finds—or finds that the evidence clearly—frankly overwhelming supports the conclusion that the [loss] amount is in excess of $70,000." *Id.* at 136, 130, 148 (Page ID #819, 813, 831). After other adjustments, Catchings's total offense level became twenty. Combined with his criminal history category of III, Catchings's Guidelines range became forty-one to fifty-one months of imprisonment. The district court imposed a sentence of fifty-one months of imprisonment and ordered restitution in the amount of $77,271.70. R. 94 (Judgment) (Page ID #493–500); R. 112 (9/29/2011 Sentencing Hr'g Tr. at 169–72) (Page ID #852–55).

Catchings filed two timely notices of appeal that were docketed separately. In No. 11-6303, Catchings filed a pro se brief and argues that his guilty plea was not entered knowingly or voluntarily. He also asserts that the district court erred in denying his motion to withdraw his guilty plea. In No. 11-6305, in which Catchings is represented by counsel, he claims that the district court erred in its calculation of loss amount under the Guidelines. These appeals were consolidated, and Catchings's counsel argued both cases at oral argument. We address each of Catchings's arguments in turn.[3]

## II. KNOWING, VOLUNTARY, AND INTELLIGENT PLEA

Catchings argues that his plea was not entered knowingly or voluntarily because his attorney misled him into signing a plea agreement by assuring Catchings that he would receive probation. 11-6303 Appellant Br. at 5–6. Catchings also argues that his

---

[3]In his pro se brief, Catchings appears to raise two additional issues that can be disposed of summarily. First, Catchings argues that he received ineffective assistance of counsel at his change of plea hearing and at his sentencing hearing. 11-6303 Appellant Br. at 13. We decline to entertain this claim because it is not ripe for review with an undeveloped record. *See United States v. Franco*, 484 F.3d 347, 355 (6th Cir. 2007). Furthermore, this court has a general rule to refrain from ruling on ineffective-assistance-of-counsel claims on direct appeal because they are more properly raised in a post-conviction proceeding under 28 U.S.C. § 2255. *Id.* Second, Catchings asserts that the district court lacked subject-matter jurisdiction because the search warrants were invalid. 11-6303 Appellant Br. at 17–18. The connection between the validity of the search warrants and jurisdiction is unclear, and this appears to be an attempt to couch an attack on the validity of the search warrants by framing it as a jurisdictional issue. Regardless, the district court had jurisdiction under 18 U.S.C. § 3231, and Catchings waived his challenge to the search warrants when he pleaded guilty. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

plea was not knowing or voluntary because the district court failed to comply with Federal Rule of Criminal Procedure 11 ("Rule 11") when it accepted his guilty plea. *Id.* at 9–12. Catchings's arguments are not persuasive because there is nothing in the record that would lead us to believe that Catchings's plea was not entered knowingly, voluntarily, or intelligently.

We review de novo whether a defendant's plea was entered knowingly, voluntarily, and intelligently; however, "[t]he underlying factual bases relied upon by the district court are reviewed for clear error." *United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007). "When a defendant fails to object contemporaneously to the district court's alleged failure to comply with the requirements of Rule 11, we review for 'plain error.'" *United States v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005) (quoting *United States v. Vonn*, 535 U.S. 55, 59 (2002)). Under this review, "the burden is on the defendant to show that but for the error, he would not have pleaded guilty." *United States v. Martin*, 668 F.3d 787, 791 (6th Cir. 2012).

"A guilty plea is valid if it is entered knowingly, voluntarily, and intelligently by the defendant." *Dixon*, 479 F.3d at 434. "Rule 11 is meant to ensure that the district court is satisfied that the defendant's plea is knowing, voluntary, and intelligent." *Webb*, 403 F.3d at 378. Under Rule 11, the district court verifies that the defendant is pleading voluntarily and "that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *Id.* at 378–79.

At Catchings's sentencing hearing, the district court found no indication in the record that Catchings's plea was not entered knowingly or voluntarily. R. 111 (3/11/2011 Sentencing Hr'g Tr. at 6) (Page ID #655). Reviewing the record ourselves, we agree. There is simply nothing in the record that would lead us to conclude that Catchings's plea was anything but knowing, voluntary, and intelligent. *See* R. 114 (Change of Plea Hr'g at 4–32) (Page ID #875–903). Catchings's assertion that he pleaded guilty based on the assurances of his attorney that he would receive probation

finds no support in the record. At his change-of-plea hearing, Catchings was informed that the count to which he was pleading guilty carried a maximum penalty of fifteen years of imprisonment. *Id.* at 20 (Page ID #891). His plea agreement states that the government would "recommend that [Catchings] be sentenced to no more than the midrange of the applicable advisory sentencing guideline range as determined by the Court." R. 51 (Plea Agreement at 2) (Page ID #64). Catchings was certainly aware that the charge to which he was pleading guilty carried a potential term of imprisonment, and he has not pointed to any other facts that would lead us to conclude that his understanding was any different.

Catchings's arguments regarding the district court's alleged failure to comply with Federal Rule of Criminal Procedure 11 are similarly unfounded and unavailing. In his pro se brief, Catchings quotes various portions of Rule 11, but he fails to point to anything in the record that shows that the district court did not comply with Rule 11. In fact, the record shows that district court followed the requirements of Rule 11 quite literally. *See* R. 114 (Change of Plea Hr'g at 4–32) (Page ID# 875–903). For example, the district court determined that Catchings was competent to enter a guilty plea, *id.* at 4–8, 32 (Page ID #875–79, 903), and Catchings stated that he was pleading guilty of his own free will because he was, in fact, guilty, *id.* at 19–20 (Page ID #890–91). Catchings's claims are simply without merit. Therefore, we hold that Catchings's guilty plea was entered knowingly, voluntarily, and intelligently, and that the district court did not commit plain error in following the requirements of Rule 11.

### III.  PLEA WITHDRAWAL

In his motion to withdraw his guilty plea, Catchings claimed that his plea was "unfairly obtained or given through ignorance, fear, or inadvertence." R. 69 (Mot. to Withdraw Plea at 1) (Page ID #105). Although far from clear, Catchings seems to have argued that his counsel was ineffective by inducing Catchings to plead guilty with the promise that his release on bond would not be opposed and by failing to explain the consequences of a guilty plea. *Id.*; R. 73 (Addendum to Plea Withdrawal) (Page ID #113–17). The district court denied Catchings's motion to withdraw his guilty plea,

finding that it was untimely and without merit.**4** R. 111 (3/11/2011 Sentencing Hr'g Tr. at 6) (Page ID #655). *Id.* On appeal, Catchings argues that the district court erred in denying his motion by failing comply with Rule 11 and by not considering his allegation that counsel was ineffective before denying the motion. These arguments lack support in the record; therefore, we affirm the district court's denial of Catchings's motion to withdraw his guilty plea.

We review for abuse of discretion the district court's denial of a motion to withdraw a guilty plea. *United States v. Wynn*, 663 F.3d 847, 849 (6th Cir. 2011). "A district court abuses its discretion where it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008) (quotation marks and citation omitted).

Under Rule 11(d), a defendant may withdraw a guilty plea if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). In making the determination of whether the defendant has shown a "fair and just reason," we consider the totality of the circumstances, including the factors set forth in *United States v. Bashara*:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

27 F.3d 1174, 1181 (6th Cir. 1994). These factors "are a general, non-exclusive list and no one factor is controlling." *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996)

---

**4**The district court also noted that this motion appears to be filed as part of Catchings's tactic of contesting everything to delay his case. R. 111 (9/29/2011 Sentencing Hr'g Tr. at 6) (Page ID #655). Although criminal defendants are certainly entitled to make any arguments they wish, we acknowledge that the district court did a commendable job of managing Catchings's various pro se motions and arguments.

(per curiam). Our examination of these factors in this case buttresses our conclusion that the district court did not abuse its discretion in denying Catchings's motion to withdraw his guilty plea because Catchings did not offer a fair and just reason that finds support in the record.

*1. Length of delay.* Catchings waited over two months after pleading guilty to file his motion to withdraw his guilty plea. We have consistently determined that shorter delays weigh against withdrawal; therefore, this factor weighs against Catchings's attempt to withdraw his plea. *See United States v. Benton*, 639 F.3d 723, 727 (6th Cir. 2011) (collecting cases regarding the amount of delay and noting that "[t]his Court has declined to allow plea withdrawal when intervening time periods were as brief as one month"); *see also United States v. Martin*, 668 F.3d 787, 795 (6th Cir. 2012) (collecting cases regarding the amount of delay).

*2. Validity of Catchings's reason for failing to move for withdrawal earlier.* Catchings claims that he asked his attorney to file his motion to withdraw his guilty plea five days after he pleaded guilty. 11-6303 Appellant Br. at 15–16. Catchings has not pointed to any evidence in the record that supports this contention. We note, however, that Catchings did date his motion for plea withdrawal January 18, 2011, which was only five days after he was permitted to proceed pro se. Although this is some indication that Catchings himself might not have caused the delay, we are not convinced that he was unable to express his intention to withdraw his guilty plea prior to being permitted to proceed pro se.

At the hearing on his motion to dismiss his counsel, Catchings alluded to the fact that he would not have pleaded guilty if he had known that his relevant conduct could be considered in determining his sentence. R. 109 (Mot. Hr'g at 21) (Page ID #610). Catchings did not, however, assert that he instructed his counsel to file a motion to withdraw his guilty plea. Instead, he voiced his dissatisfaction with his attorney's failure to request a bond hearing. *Id.* at 6–11 (Page ID #595–600). We also note that Catchings did not present his reason for delay in his original motion to withdraw his plea or in the addendum to that motion, which he filed later. Without any evidence supporting his

contention that he asked his attorney to file a motion to withdraw his guilty plea, Catchings has failed to present a valid excuse for his delay in filing his motion to withdraw his plea.

*3. Catchings's innocence.* The third factor also weighs against Catchings because he pleaded guilty, affirming that he was, in fact, guilty, and has not asserted that he is innocent. R. 114 (Change of Plea Hr'g Tr. at 32) (Page ID #903); R. 51 (Plea Agreement at 1–2) (Page ID #63–64); *see* 11-6303 Appellant Br. at 9 ("Now withdrawing [my] plea doesn't necessarily mean that I am innocent . . . .").

*4. Circumstances underlying the entry of Catchings's guilty plea.* In considering the circumstances underlying the entry of the guilty plea, we note, as discussed in Part II of this opinion, that the district court complied with Rule 11 and that Catchings knowingly, voluntarily, and intelligently pleaded guilty with a full understanding of his rights and the consequences of his plea.[5] *See* R. 114 (Change of Plea Hr'g at 4–32) (Page ID #875–903). Therefore, the fourth factor supports the denial of Catchings's motion to withdraw his guilty plea.

*5. Catchings's nature and background.* Catchings attended college for several years, and he reports having various professional licenses. He has not argued that he did not understand the proceedings below, and his background indicates that was capable of understanding the consequences of his guilty plea. Therefore, this factor weighs against withdrawal.

*6. Catchings's prior experience with the criminal-justice system.* Likewise, the sixth factor weighs against Catchings because he has fairly extensive prior experience with the criminal-justice system, as reflected in his criminal history category of III.

---

[5]To the extent that Catchings argues that he would not have pleaded guilty had he known that relevant conduct would have been included in the calculation of his Guidelines range, we are not persuaded that this is true. There is ample evidence in the record that Catchings was well aware of the fact that relevant conduct could be included in calculating his Guidelines range. *E.g.*, R. 51 (Plea Agreement at 2) (Page ID #64) ("All parties agree that the advisory Sentencing Guideline range and any restitution amount will be computed based upon the relevant conduct findings by the Court at sentencing."). In fact, Catchings asked the district court about the effect the relevant conduct would have on his sentence prior to pleading guilty. R. 114 (Change of Plea Hr'g at 10–13) (Page ID #881–84).

*7. Potential prejudice to the government if the motion to withdraw is granted.* Finally, we need not consider this factor because Catchings has not put forth a fair and just reason for allowing withdrawal of his plea. *United States v. Spencer*, 836 F.2d 236, 240 (6th Cir. 1987) ("[T]he government is not required to establish prejudice that would result from a plea withdrawal, unless and until the defendant advances and establishes a fair and just reason for allowing the withdrawal . . . .").

In sum, our analysis of these factors indicates that Catchings's motion to withdraw his guilty plea was properly denied. Catchings's argument that the district court should have considered his allegation that defense counsel was ineffective before denying Catchings's motion to withdraw does not fit neatly into one of the seven factors analyzed above, but it also fails. The record shows that Catchings's last accusation that his "elbow counsel" was not "competent" was on February 12, 2011. R. 72 (Mot. to Dismiss Elbow Counsel) (Page ID #110–12). On March 23, 2011, Catchings made an oral motion to reinstate his counsel to represent him fully. Therefore, the district court had no reason to consider Catchings's argument that his counsel was ineffective given that Catchings reinstated his counsel after making that claim. R. 111 (3/11/2011 Sentencing Hr'g Tr. at 24, 27–28) (Page ID #673, 676–77). In considering the totality of the circumstances, we hold that the district court did not abuse its discretion in denying Catchings's motion to withdraw his guilty plea.

## IV.  GUIDELINES RANGE CALCULATION

Catchings argues that the district court improperly calculated his Guidelines range by including non-criminal conduct as relevant conduct for the purpose of determining the amount of loss under U.S.S.G. § 2B1.1(b)(1). Catchings advances two arguments in support. First, Catchings asserts that "[t]he evidence presented at the sentencing hearing was insufficient to establish that [he] committed any criminal conduct relating to Mr. McCoy and U.S. Investments & Construction." 11-6305 Appellant Br. at 10. Second, he claims that the district court's factual findings regarding the U.S. Investments & Construction credit cards were clearly erroneous because they are

unsupported by the evidence presented at sentencing. We agree with Catchings on both points.

We review the "district court's findings of fact at sentencing for clear error and its legal conclusions regarding the Sentencing Guidelines *de novo*." *United States v. Maken*, 510 F.3d 654, 656–57 (6th Cir. 2007). However, "[b]ecause the district court's determination that the activity in this case constitutes 'relevant conduct' under the Sentencing Guidelines involves the application of law to fact, we review the district court's determination de novo." *United States v. Shafer*, 199 F.3d 826, 830 (6th Cir. 1999). "Where the district court materially erred by failing to calculate the appropriate guideline range, we are required to remand for re-sentencing." *United States v. Damra*, 621 F.3d 474, 508 (6th Cir. 2010) (quotation marks and citation omitted).

In calculating the Guidelines loss under U.S.S.G. § 2B1.1(b)(1), district courts include losses sustained from relevant conduct under U.S.S.G. § 1B1.3. Although "relevant conduct is not limited to conduct for which the defendant has been convicted," the conduct must "amount[] to an offense for which a criminal defendant could potentially be incarcerated." *Maken*, 510 F.3d at 658–59; *Shafer*, 199 F.3d at 831. In short, relevant conduct under § 1B1.3 must be criminal conduct. *See United States v. Schaefer*, 291 F.3d 932, 940 (7th Cir. 2002) (noting that its holding "that relevant conduct under § 1B1.3 of the Guidelines is limited to criminal conduct" is "amply supported" by case law in the Third, Fifth, and Eighth Circuits).

Catchings argues that the district court erred by including his conduct related to the U.S. Investments & Construction credit cards in its calculation of the Guidelines loss amount because there was insufficient evidence to establish that said conduct was criminal.[6] In essence, Catchings points to evidence that showed that, unlike the other victims who had their personal information stolen and their signatures forged on credit-

---

[6]If the district court did not include the U.S. Investment & Construction credit cards, the total loss would have been greater than $30,000 but less than $70,000, resulting in a lower total offense level of eighteen and a lower Guidelines range of thirty-three to forty-one months. 11-6305 Appellant Br. at 14; *see* U.S.S.G. § 2B1.1(b)(1); *see also* U.S.S.G. Sentencing Table.

card applications, McCoy authorized Catchings to use his information to obtain credit cards for their business, U.S. Investments & Construction.

The government contends that Catchings's conduct relating to the U.S. Investments & Construction cards "closely mirrors" his conduct in obtaining the other credit cards because:

> It involved the same pattern of fraud or *modus operandi*. The defendant used victims' information, much of which was obtained during his prior business relationships with the victims, to establish or obtain unauthorized access to credit accounts in their names. The conduct was done for the same purpose. In each case, the defendant would steal money, goods and services from banks and merchants by using these credit[] accounts for his own benefit—all at the expense of the unknowing account holders.

11-6305 Appellee Br. at 22. The government acknowledges, however, that McCoy may have been aware of the existence of the cards. *Id*. at 24. Nonetheless, the government concludes that Catchings's conduct related to the U.S. Investments & Construction cards was criminal by citing numerous criminal statutes without explaining how the statutes apply to the contested conduct.[7] *Id.* at 25. This lack of analysis highlights the district court's error.

Contrary to the government's assertion that Catchings's conduct related to the U.S. Investments & Construction cards "involved the same pattern of fraud or *modus operandi*," we believe that this conduct is distinguishable from his use of other cards. Catchings did not fraudulently obtain the company credit cards, as he did with the other cards; instead, McCoy testified that they obtained credit cards for their business:

Q: Were there any credit cards that were obtained for the purposes of furthering the business?

A: Yes.

---

[7]The government points to the district court's use of "illegal conduct" as being indicative of a recognition that Catchings's conduct violated criminal law. 11-6305 Appellee Br. at 25–26. Illegal conduct is not necessarily the type "that could lead to a criminal conviction resulting in prison time," and we decline to equate "illegal conduct" with "criminal conduct" in this case. *Shafer*, 199 F.3d at 830–31.

R. 112 (9/29/2011 Sentencing Hr'g Tr. at 89–90) (Page ID #772–73).  Although there was evidence that McCoy did not authorize Catchings to use the credit cards, the government has not proved—and the district court failed to explain—how Catchings's use of the cards constituted criminal conduct.[8]  The evidence showed that Catchings was U.S. Investments & Construction's president, McCoy relied on Catchings to "take care of everything," and Catchings was authorized to sign on behalf of the business.  R. 112 (9/29/2011 Sentencing Hr'g Tr. at 97, 100–01) (Page ID #780, 783–84).  It is unclear how Catchings, the person who was responsible for running the company and who could sign on behalf of the company, violated criminal statutes by using the company's credit cards (even without authorization from McCoy).[9]  There was insufficient evidence to support the conclusion that Catchings engaged in criminal conduct in obtaining or using the U.S. Investments & Construction cards.  Therefore, the district court erred in including those cards as relevant conduct in calculating the amount of loss.

Catchings also argues that the district court's finding that the cards were "personal" is clearly erroneous.  Catchings observes that the cards were not in McCoy's name, unlike the other cards included as relevant conduct that were in individuals' names.  11-6305 Appellant Br. at 12–13.  At the sentencing hearing, McCoy testified that credit cards were obtained for the purpose of furthering their business, U.S. Investments & Construction, and that the cards "had the business name on them."  R. 112 (9/29/2011 Sentencing Hr'g Tr. at 89–90) (Page ID #772–73). Catchings argues that in addition to the fact that the cards were in the business's name, there was no evidence presented at sentencing that the cards were used for personal purchases. We agree with Catchings.  The evidence was ambiguous as to the nature of the charges and, as a result,

---

[8]The district court did not state what criminal statute Catchings violated with regard to his use of the U.S. Investments & Construction cards.  We find this omission problematic in this case for two reasons.  First, Catchings contested whether his conduct related to these cards was criminal.  Therefore, the district court was aware of the need to make an explicit finding of criminality with regard to that conduct.  Second, although relevant conduct can include uncharged conduct, the fact that the U.S. Investments & Construction cards were not listed in any charge against Catchings makes the need for an express statement of what statute this conduct violated even greater.  In comparison, the other cards that were included in the relevant-conduct section of the PSR were listed in the indictments.

[9]This is not to say that Catchings's conduct could not have been criminal.  Rather, we make this observation in the context of the evidence presented at his sentencing hearing.

is not a basis for concluding that the U.S. Investments & Construction credit cards were for "personal use." Therefore, the district court did make a clearly erroneous finding of fact that Catchings obtained the cards for personal use.

Although we certainly agree with the district court that Catchings took advantage of an overly trusting friend, we cannot say, based on the evidence presented at sentencing, that Catchings's conduct with respect to the U.S. Investments & Construction credit cards was criminal. The evidence showed that McCoy authorized Catchings to open the accounts and that the cards were in the name of their business, U.S. Investments & Construction. The evidence was insufficient to establish that Catchings's conduct was criminal, and the district court erred by including these cards in its loss calculation under U.S.S.G. § 1B1.3. Therefore, we vacate Catchings's sentence and remand for resentencing.

## V.  CONCLUSION

As set forth in this opinion, we **AFFIRM** the judgment of conviction of the district court and its denial of Catchings's motion to withdraw his guilty plea; however, we **VACATE** Catchings's sentence and **REMAND** the case for resentencing.