NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0685n.06

No. 13-1193

FILED
Sep 03, 2014
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| LAURIE BAKER, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:    DAUGHTREY, McKEAGUE, and DONALD, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.    Defendant Laurie Baker pleaded guilty to a one-count indictment charging her with the statutory rape of a 14-year-old boy, a federal crime because it occurred on the reservation of the Grand Traverse Band of Ottawa and Chippewa Indians.  *See* 18 U.S.C. §§ 1153, 2243(a).  She was sentenced to 42 months' imprisonment, an upward variance from the applicable guidelines range of 30 to 37 months. Baker now appeals her conviction, claiming that she should have been permitted to withdraw her guilty plea.  She also appeals her sentence, contending that the district court failed to explain its reasons for an upward variance.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Laurie Baker was charged in a one-count indictment with sexual abuse of a minor by knowingly engaging in sexual intercourse with D.E.B., a male between the ages of 12 and 16,

who was more than four years younger than Baker. She entered a guilty plea before a magistrate

judge in January 2012, pursuant to a plea agreement that did not include a detailed description of

the underlying facts. Consequently, at her plea hearing, the district court asked Baker to provide

her own version of the facts. She stated under oath:

> On the night that this happened, the victim was texting me and he seemed a little upset. His dad had just passed away, and his mom was in jail and looking at prison time. So I told him to come over, we could watch a movie, and he could talk to me for a while. And he said okay. And I asked him over the phone earlier during the day but he didn't come over until after dark and he came through my bedroom window, and I asked him what he was feeling, and he is like, he was, he said he was just sad. You know, so I was – I told him, well, you can always talk to me, you know. And so then he started fondling my breasts and I told him no, that we shouldn't do this. And he asked me why. And I told him it was because he was too young. And he said, so that doesn't matter. And so I told him no again, and then I just gave in and we had sex.

The prosecutor agreed that the defendant's statements were sufficient to support her guilty plea

but also told the court that the victim's view of the facts was different: D.E.B. claimed that he

did not consent to having sex with the defendant, that "it was not his idea, and that Ms. Baker

forced herself on him."

Noting that consent was not an element of the crime charged, the prosecutor took the

position that the factual discrepancy was irrelevant to the offense of statutory rape, although it

could nonetheless be an issue at sentencing when the district court would determine whether

Baker was eligible for acceptance-of-responsibility credit. Baker's counsel informed the court

that he had spoken with his client about the victim's allegation of forcible rape and believed that

the disputed facts were not relevant to her guilty plea, given that Baker was willing to admit to

the elements of the crime charged in the indictment — statutory rape. The magistrate judge

agreed with the attorneys that the issue of consent was legally irrelevant to statutory rape and

asked Baker whether she understood that consent was not a defense. Baker confirmed that she understood.

After conducting a thorough colloquy, the magistrate judge concluded that Baker was competent to enter a guilty plea and that her plea was knowing and voluntary. He accepted the guilty plea but reserved acceptance of the plea agreement for the district judge.

A subsequently-issued presentence report recited both D.E.B.'s and Baker's versions of the facts. According to D.E.B., on the evening of the offense Baker invited him via text message to her house to watch a movie. He entered through the front door. Baker gave him several glasses of a beverage that make him feel dizzy and caused him to have trouble walking. Later in the evening, Baker

> pulled him into her bedroom, pushed him on the bed, and removed some of his clothing. . . . While lying on his back, D.E.B. reported Ms. Baker grabbed his penis with her hand and performed oral sex on him. She then pulled her gown up, removed her underwear, got on top of him, told him to put his arms around her, and guided his penis into her vagina. During intercourse, he stated he tried to push Ms. Baker off of him and told her to stop, but she refused. He also made the statement, "Get off me now," but the defendant responded "No."

Baker offered a different version of events to the probation officer, who interviewed her by telephone in the presence of counsel. She claimed that "she tried to stop D.E.B.'s advances, but things got 'carried away,'" and "they eventually had sexual intercourse." The presentence report indicated that Baker admitted to the statutory elements of the offense but noted that Baker's and D.E.B.'s accounts were irreconcilable. The probation officer who drafted the report concluded that "the victim appears mo[re] credible" and recommended that Baker not receive acceptance-of-responsibility credit because she denied relevant conduct. Baker objected to the probation officer's recommendation.

At Baker's sentencing hearing in August 2012, her counsel reiterated Baker's position that D.E.B. was the aggressor, and the district court noted the defendant's objection to the victim's version of the facts. The court questioned "whether we even have a valid guilty plea in light of all of this," acknowledging that the factual dispute perhaps made no difference "in a purely legal sense," but saying that "if Ms. Baker finds it impossible for one reason or another to acknowledge that she was the aggressor, I'm not really sure where that leaves us." Baker's counsel expressed uncertainty as to whether Baker was "still arguing that there was coercion or duress" or "is willing to admit that she was the aggressor." The prosecutor then discussed a letter, submitted to the court for consideration in sentencing, that was written by Baker's mental health counselor in July 2012. The letter recounted Baker's April 2012 description of the incident to her counselor and reported that Baker described "being raped by a minor." The counselor also wrote, "Due to her history of trauma as a child and domestic violence as an adult, it would make sense to her to rationalize that she was somehow responsible for the attack," and that "Ms. Baker reported to me that she was convinced to take the plea because it wouldn't affect her living situation or custody of her son." The prosecutor characterized the account Baker allegedly gave to the counselor as "a reversal" from Baker's earlier statement at the plea hearing.

The district court responded that in light of the parties' inability to agree on the facts, she was "prepared to entertain a motion to withdraw the plea." Defense counsel raised the possibility of also moving for a mental health evaluation. The court then adjourned the hearing for 14 days to give Baker an opportunity to file motions, if she chose to do so. Baker filed both motions. The district court subsequently held a hearing at which it found Baker competent to stand trial and then invited argument on the motion to withdraw her guilty plea.

Baker's attorney contended that Baker should be permitted to withdraw her guilty plea because she realized only after seeing a counselor that she was actually the victim and should not be punished for being forced or coerced into having sex with a minor. Counsel stated that Baker was "not asserting that she is not guilty" but, rather, was offering a defense. The district court asked whether there was any evidence in the record that the victim had forced or coerced Baker into having sex with him and whether, in any event, there was any legal support for such a defense to statutory rape. Defense counsel was unable to provide either evidence that D.E.B. was in any way at fault (other than Baker's conflicting statements) or case law to establish that Baker had a legally cognizable defense.

The district court then pondered whether Baker had offered a "fair and just reason" to withdraw her plea and concluded that "all of the factors fall in favor of the government." The court noted that a significant amount of time had passed; that Baker failed to offer a valid reason for failing to move earlier to withdraw her plea; that the record did not support a finding that the victim had forced himself on the defendant; that, at most, the record showed that Baker "gave in to his advances"; that nothing related to the circumstances surrounding the entry of the plea or Baker's background supported withdrawal; that her criminal history weighed in neither direction; and that the government would be somewhat prejudiced because the victim would have to endure a protracted proceeding. The district court then denied Baker's motion to withdraw her guilty plea.

At a subsequent sentencing hearing, Baker stated again that she disagreed with D.E.B.'s version of the facts as recounted in the presentence report and claimed that she "never knew what the kid said until I got the presentence report. And what he said was not even true." The district court refused to apply a reduction of three offense levels for acceptance of responsibility, noting

that, although "the defendant at the time of the guilty plea did provide the minimal admission of the necessary elements to convict her on her plea of the offense with which she is charged," since then "she has done nothing except . . . deny relevant conduct to attempt to avoid responsibility for her actions, to attempt to cast the victim as the guilty party, to cast herself as the victim." The district court also rejected defense counsel's argument that Baker's criminal history category overrepresented her criminal history, noting that one of her prior convictions was for a crime of violence and stating that her conviction for selling alcohol to a minor was "chillingly similar to the offense here in the sense of corrupting a minor."

The district court explained the factors it considered in deciding on an appropriate sentence, noting that "this is a very serious offense. It's one that is distasteful to think about, it's difficult to hear about, and I'm quite sure very difficult to have testified about for D.E.B.," who took the stand at the sentencing hearing. In balancing the seriousness of the offense against Baker's history and characteristics, the district court noted that the defendant was a 42-year-old single mother who had obtained a GED and had an employment history consisting mainly of brief, low-wage jobs. The district judge continued:

> And she is someone who has — I can find very little positive comment to make about Ms. Baker. And the longer this proceeding went on, through Ms. Baker's allocution, the more that became true. She obviously does see herself as the victim in this case, which just as obviously is not true. She spent . . . the better part of her allocution talking about herself, making excuses for what she did, talking about how difficult her life is. Going so far as to say that she is going to prison for something she did not do. Which she clearly did do.

Noting that an appropriate sentence must "provide just punishment for the offense" and "promote respect for the law," the court concluded that "the history and characteristics of Ms. Baker really argue for exceeding the guidelines." After "balancing all of the factors," the district court sentenced Baker to an above-guidelines term of 42 months' imprisonment.

**DISCUSSION**

*Motion to withdraw guilty plea*

We review the district court's denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. Catchings*, 708 F.3d 710, 717 (6th Cir. 2013). "A district court abuses its discretion where it relies on clearly erroneous findings of fact, . . . improperly applies the law or uses an erroneous legal standard." *Id.* (quotation marks and citation omitted). A defendant bears the burden of demonstrating "a fair and just reason for requesting the withdrawal." *See id.* (quoting Fed. R. Crim. P. 11(d)(2)(B)). In determining whether the defendant has offered "a fair and just reason," we must consider "the totality of the circumstances," *id.*, including:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained [her] innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *superseded by guidelines amendment on other grounds*, USSG § 3B1.1. These factors constitute "a general, non-exclusive list and no one factor is controlling." *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996). Here, each factor supports the district court's decision to deny Baker's motion.

As the district judge observed, Baker waited an extraordinarily long time – almost nine months – to file a motion to withdraw her guilty plea, and failed to offer a legitimate reason for the delay. *See, e.g., United States v. Valdez*, 362 F.3d 903, 913 (6th Cir. 2004) (stating that the defendant's "unjustified 75-day delay, alone, supported the court's denial of a motion to withdraw"). "[W]here a defendant is aware of the condition or reason for a plea withdrawal, at

the time the guilty plea is entered, a case for withdrawal is weaker." *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987). Baker conceded that she was aware of the factual dispute at the time she pleaded guilty. On appeal, she offers a nonsensical argument that she nonetheless should have been permitted to withdraw her plea because the *court* was aware of the basis of her motion for withdrawal – her claim that D.E.B. was the aggressor – during the change-of-plea hearing, and "the delay was, under the circumstances, predictable, understandable and without prejudice to the government." Baker does not explain, however, why the district court's awareness of the factual dispute justified a nine-month delay in filing her motion, nor is it obvious why the delay was "predictable" or "understandable."

Baker also contends that she should be permitted to withdraw her plea because there was no meeting of the minds between her and the prosecutor, given the factual dispute. However, at the change-of-plea hearing, her counsel stated explicitly that the factual dispute had no bearing on the guilty plea itself and was relevant, if at all, only to sentencing.

Baker further argues that she did not understand D.E.B.'s allegations of forcible rape until she read the presentence report; that she was unaware of the availability of various defenses to statutory rape, including duress or coercion; and that the letter she submitted from her counselor explained why Baker would have initially accepted responsibility for a sexual assault in which she was actually the victim. However, none of these arguments justifies the delay.

First, the transcript of the change-of-plea hearing belies Baker's claim that she did not understand D.E.B.'s allegations. At the initial hearing, all parties acknowledged the factual dispute; Baker's counsel said that he had spoken with Baker about D.E.B.'s allegations of force; and Baker indicated that she was satisfied with her attorney's representation. Thus, her claim

that she did not understand the import of D.E.B.'s allegations until after reading the presentence report is not supported by the record.

Second, Baker's claim that she realized only after she pleaded guilty that she might have a viable defense cannot provide a basis for withdrawing her plea. "Once a defendant enters a voluntary and unconditional guilty plea, our appellate review becomes sharply circumscribed: we are limited to the consideration of jurisdictional issues and the voluntariness of the guilty plea itself." *United States v. Mendez-Santana*, 645 F.3d 822, 828 (6th Cir. 2011). Baker waived her right to pursue affirmative defenses when she signed the plea agreement. Thus, even if Baker's claim that D.E.B. forced or coerced her into having sex were a legitimate defense to statutory rape, she cannot raise it after pleading guilty unless she can establish the plea itself was involuntary — which she has not attempted to do.

Third, even if Baker realized that she was the victim in her encounter with D.E.B. only after she began counseling in April 2012, she does not explain why she waited until after the aborted August 2012 sentencing hearing to file a motion to withdraw. Indeed, the record shows that at the August hearing, it was the *judge* who raised the possibility that Baker might want to move to withdraw her plea; Baker's counsel argued that "she entered a valid guilty plea," that it made no difference to the validity of the plea whether Baker or D.E.B. was at fault, and that Baker had adequately pleaded to the essential elements of the offense. Moreover, subsequent to submitting her counselor's letter, Baker stated on the record that she acquiesced in D.E.B.'s advances, saying at the sentencing hearing that "I allowed [D.E.B.] to have sex with me, yes," thus backtracking from any allegation of forcible rape by a minor that she may have made to her counselor. She cannot now claim, based on hearsay evidence produced by her counselor, that D.E.B. forced or coerced her to have sex with him, especially when her own in-court statements

contradict the hearsay allegations in the letter. For these reasons, Baker has not provided any legitimate explanation for the lengthy delay, *see* Fed. R. Crim. P. 11(d)(2)(B), and the first two factors – the length of the delay and the reason for the delay – therefore support the district judge's decision to deny Baker's motion to withdraw her guilty plea.

The other *Bashara* factors also support the district court's decision. Baker has never asserted her innocence. Indeed, as Baker's attorney stated during the January 2013 sentencing hearing, Baker was "not asserting that she is not guilty." She merely belatedly raised a possible defense of duress — one that the record supports weakly, if at all. In any event, the mere assertion of a potentially viable defense, without more, is insufficient to warrant withdrawal of a guilty plea. *See United States v. Mader*, 251 F.3d 1099, 1106 n.10 (6th Cir. 2001) (upholding denial of defendant's motion to withdraw where the defendant "did not deny that he committed acts sufficient . . . to serve as the factual basis for his guilty plea," even though he "challenged numerous statements in the factual basis offered by the government") (superseded on other grounds by *United States v. Mendez-Santana*, 645 F.3d 822 (6th Cir. 2011)). Moreover, as the district court noted, "[S]he isn't really, truly asserting actual innocence here," and there is nothing in the record to support her claim that the victim forced or coerced her into having sex with him. Thus, the third factor supports the district court's decision.

Baker does not seriously contest the circumstances under which her plea was entered. Additionally, her "nature and background" and her "prior experience with the criminal justice system," the fifth and sixth factors, *see Bashara*, 27 F.3d at 1181, support the district court's decision. There is no reason to think she was incapable of making an informed decision to plead guilty. Thus, we conclude that, considering the totality of the circumstances, the district court did not abuse its discretion in rejecting Baker's motion to withdraw her guilty plea.

*Unreasonableness of Sentence*

Baker next argues that her sentence was unreasonable because the district court failed to explain its reasons for the "upward departure" of five months above what she concedes is an accurately-calculated guideline range of 30 to 37 months. Without indicating whether she considers the sentence procedurally or substantively unreasonable, she complains principally that the court failed to discuss any of the grounds for a departure listed in *United States v. Thomas*, 24 F.3d 829, 833 (6th Cir. 1994). But, the sentencing issue in *Thomas* concerned the imposition of an upward departure pursuant to USSG § 4A1.3, which governs "departures based on inadequacy of criminal history category." By contrast, the district court in this case did not impose an upward departure. Instead, the court imposed an upward variance after considering the relevant factors set out in 18 U.S.C. § 3553(a), which the district court discussed at length.

As the Supreme Court held in *Gall v. United States*, 552 U.S. 38, 46 (2007), "[A] district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." Our role, as the reviewing court, requires that we apply an abuse-of-discretion standard and give "due deference" to the district court's decision that the § 3553(a) factors justify a variance from the guidelines range. *Id*. at 51. Moreover, we need not "require[ ] 'extraordinary' circumstances to justify a sentence outside the Guidelines range." *Id.* at 47. In this case, because Baker failed to raise an objection to the variance at sentencing, we review the issue only for plain error. *See United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008).

A district court is required to provide a "specific reason" for varying from the guidelines range, *United States v. Johnson*, 640 F.3d 195 (6th Cir. 2011), or, as other courts have explained,

to "adequately articulate[] its reasoning for imposing the particular sentence chosen, including any rejection of the parties' arguments for an outside-Guidelines sentence and any decision to deviate from the advisory Guidelines range." *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007). Case law indicates that this standard is more than satisfied here.

In *United States v. Johnson*, the district court ordered a 15-month upward variance from the advisory guidelines range of 15 - 21 months on the basis "that the sentence . . . reflects the seriousness of his offense in violating his supervised release in the fashion that he did . . . promote[s] respect for the law; obviously he didn't have any at the time he became involved." *Id*. at 207. The district court also noted that "the sentence was intended to provide just punishment, adequate deterrence, and opportunities for educational and vocational training." *Id*. at 208. Despite the generalized nature of these statements, this court affirmed the sentence finding that the district court had provided a "specific reason" and adequately justified the departure by considering the nature and circumstances of the original offense and the defendant's history and characteristics. *Id*. at 207-08.

Similarly, in *United States v. Vowell*, we affirmed an "extraordinary" upward variance of several years based on the "abusive and heinous" nature of the offense, the lasting damage inflicted on the victim, the defendant's previous statutory rape conviction, the need to protect the community and combat child pornography, and the necessity of enhanced punishment because of the harm caused to the victim. 516 F.3d 503, 508 (6th Cir. 2008); *see also United States v. Stoutermire*, 516 Fed. App'x 583, 586–87 (6th Cir. 2013) (affirming a substantial upward variance on the basis of the need to protect the public from identity theft and the defendant's criminal history); *United States v. Van*, 541 Fed. App'x 592, 596 (6th Cir. 2013) (affirming an upward variance where the court "explained, albeit in a slightly disorganized manner, that it was

imposing a harsher sentence in part because (1) the offense was serious . . . and (2) [the defendant] did not fully accept the seriousness of his conduct, as evidenced by his pro se motion to dismiss.").

Like the district courts in *Johnson* and *Vowell*, the district court in this case fully considered the § 3553(a) factors on the record and then provided a "specific reason" for the minor upward variance. In discussing the requisite sentencing considerations set out in § 3553(a), the district court observed that the statutory rape charge was "a very serious offence" and "a distasteful kind of crime, an adult woman, a young teenage boy, a sexual encounter that should never, ever have happened." The court also noted that the sentence imposed must "promote respect for the law" and considered the need for "deterrence and protection of the public, particularly in light of the nature of the offense, as well as the nature of the criminal history." Specifically, the court was concerned that Baker had committed a prior offense involving a juvenile and that, in this case, she repeatedly claimed that she had been victimized by D.E.B., rather than the other way around. Indeed, she maintained at various points that he had raped her and persisted in efforts to excuse her own conduct at every turn. Although it is true that Baker was deprived of formal credit for acceptance of responsibility — and appropriately so — we cannot say that the district court abused its discretion in taking into account the vexatious effect that resulted from the nature and extent of the defendant's contentious conduct when it determined that a variance of five months was appropriate in this case. Certainly, we cannot say that the district court committed plain error in this regard.

## CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court.