RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0128p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
—————————————

UNITED STATES OF AMERICA,

             *Plaintiff-Appellee,*

      *v.*

DEREK BENTON,

             *Defendant-Appellant.*

No. 09-6322

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 08-20422-001—Jon Phipps McCalla, Chief District Judge.

Argued: March 9, 2011

Decided and Filed: May 17, 2011

Before: BATCHELDER, Chief Judge; CLAY and SUTTON, Circuit Judges.

—————————————

## COUNSEL

**ARGUED:** Edwin A. Perry, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. R. Matthew Price, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Stephen B. Shankman, April R. Goode, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Jennifer Lawrence-Webber, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

—————————————

## OPINION

—————————————

CLAY, Circuit Judge. Defendant Derek Benton appeals his conviction and sentence for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Benton argues that his prior state conviction for solicitation to commit aggravated assault should not qualify as a "violent felony" under the Armed Career Criminal Act, 18 U.S.C.

1

§ 924(e)(1).  Benton also alleges that the district court erred when it declined to allow him to withdraw his guilty plea in order to pursue a suppression hearing.

For the reasons set forth herein, we **AFFIRM** the decision of the district court.

## FACTUAL BACKGROUND

On September 26, 2008, Defendant Derek Benton was pulled over by police after officers witnessed him run a red light.  At the traffic stop, officers asked Benton for his license, which Benton was unable to produce.

Benton was placed in the rear of the patrol car while officers ran a background check, which revealed that Benton was driving under a suspended license and that he was wanted on an outstanding warrant.  At that time, officers placed Benton under arrest.

Officers then returned to the car and asked LaKeisha Small, Benton's passenger, to exit the vehicle.  When Small exited, officers observed a loaded Smith & Wesson .45 caliber revolver on the passenger's seat, which had been previously obscured by Small's body.  Benton admitted to knowing that the revolver was in the car, but claimed that it belonged to an acquaintance.  Small told the officers that Benton asked her to hide the revolver behind her body while the officers were approaching the vehicle.

The Memphis Police Department towed the vehicle to the city lot and completed an inventory.  A subsequent check on the revolver revealed that it had been stolen in 1996. While detained in the police station, Benton made several phone calls, which were recorded, wherein he admitted to possessing the firearm.

On December 17, 2008, Benton was indicted on one charge of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).  On June 24, 2009, Benton pleaded guilty, without the benefit of a plea agreement.

Benton's Presentence Investigation Report ("PSR") calculated his base offense level at 20, pursuant to United States Sentencing Guideline ("U.S.S.G." or "Guidelines") § 2K2.1.  Under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e) and

U.S.S.G. § 4B1.4, Benton's offense level was adjusted to 33.[1] Benton had a total of 6 criminal history points, which equated to a Criminal History Category III. Pursuant to the ACCA, Benton's criminal history category was adjusted to IV. Therefore, Benton's Guidelines range sentence was 188 to 235 months of imprisonment. Under the ACCA, Benton was also subject to a statutory sentence of 15 years to life.

The district court determined that Benton qualified for the ACCA enhancement based on the following convictions: one case of aggravated assault, committed in 1989; two cases of solicitation to commit aggravated assault (reduced from aggravated assault), committed in 1990 and charged together in 1992; and five cases of aggravated assault, committed in 1998 and charged together in 1999.

Benton objected to the ACCA enhancement before the district court, arguing that solicitation to commit aggravated assault is not a "violent felony" within the definition of the ACCA and so should not be used as a predicate crime under the statute.

On September 25, 2009, Benton filed a motion to withdraw his guilty plea. At sentencing, on October 30, 2009, the district court denied the motion to withdraw the plea, overruled the objection to the sentencing enhancement, and sentenced Benton to 180 months of incarceration. Benton then filed this timely appeal.

## DISCUSSION

### I.     Motion to Withdraw Guilty Plea

We review the district court's denial of Benton's motion to withdraw his plea for abuse of discretion. *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *United States v. Lineback*, 330 F.3d 441, 443 (6th Cir. 2003).

---

[1]Absent the designation as an armed career criminal, Benton would have been subject to a two-level enhancement because the firearm was a stolen weapon, and a three-level reduction for acceptance of responsibility.

Under Federal Rule 11(d), a defendant may "withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d). This Court applies a seven-factor test when determining whether a defendant presents valid grounds for plea withdrawal. We weigh the following:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994); *Ellis*, 470 F.3d at 281.

In providing a rationale for this test, we have emphasized that "the aim of the rule is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty." *Bashara*, 27 F.3d at 1181 (internal quotation marks omitted). We have also noted that "'[w]hen a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise.'" *Ellis,* 470 F.3d at 280 (quoting *United States v. Morrison*, 967 F.2d 264, 268 (8th Cir. 1992)).

### A.     Amount of Time Elapsed Between Plea and Motion to Withdraw

Benton entered his guilty plea on June 24, 2009, and filed his motion to withdraw on September 25, 2009—93 days later. This Court has declined to allow plea withdrawal when intervening time periods were as brief as one month. *See, e.g.,United States v. Valdez*, 362 F.3d 903, 913 (6th Cir. 2004) (finding that an "unjustified 75-day delay, alone, supported the court's denial"); *United States v. Smith*, 46 F. App'x 247, 249 (6th Cir. 2002) (finding 113 day delay "excessive")*; United States v. Jannuzzi*, 2009 WL

579331, \*3 (6th Cir. 2009) (slip) (finding 30 day delay to be "at the boundary line between what is acceptable and what is not"). The amount of time elapsed, therefore, weighs against Benton.

**B.     Validity of Reason for Failure to Move Earlier in the Proceedings**

Benton argues that the significant delay in filing his motion to withdraw ensued because, "while preparing for sentencing, Mr. Benton became aware of the then recently released [*Arizona v. Gant*, 129 S. Ct. 1710 (2009)] decision and asked counsel whether it might apply to the circumstances of his case." (Def.'s Br. at 15.) Thereafter his counsel "took time to review the circumstances of the case, perform research, and consult with other attorneys in her office . . . ." (*Id.*)

Though we recognize that defense counsel may have had to contend with competing demands on her time and resources, we cannot excuse a delay of more than three months in this case. Once Benton and his counsel became aware of new developments that might be relevant to his case, it was incumbent upon them to take action within a reasonable period of time. Therefore, while Benton may have had a valid reason for not filing the motion immediately upon learning of the Supreme Court's decision in *Gant*, he does not present a valid excuse for the extended length of the delay.

**C.     Assertion of Innocence**

Benton makes no assertion of innocence. This factor, therefore, weighs against Benton.

**D.     Circumstances Underlying the Guilty Plea**

Benton argues that he "should have been given the opportunity to withdraw his plea to attempt a motion to suppress to argue *Gant* and then to respond to any arguments the government might raise against same." (*Id.* at 17-18.)

The Supreme Court decided *Arizona v. Gant*, 129 S. Ct. 1710 (2009), on April 21, 2009, approximately two months before Benton entered his plea in this case. In *Gant*, the Supreme Court held that "[p]olice may search a vehicle incident to a recent

occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 1714.

Benton acknowledges that "[t]his Circuit has repeatedly frowned upon a practice where a defendant makes a tactical decision to enter a plea, waits several weeks, and then, believing he made a bad choice in pleading guilty, wants to withdraw the plea." (Def.'s Br. at 11 (citing *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008).) Yet this is just what Benton now argues that he should have been allowed to do.

In so arguing, Benton claims neither "unsure heart" nor "confused mind," but instead requests withdrawal for strictly tactical reasons, which we have consistently found impermissible. Thus, we also weigh this factor against Benton.

### E.    Background and Prior Experience with the Criminal Justice System

Benton has an extensive history with the criminal justice system, with his first serious offense occurring only two months after his eighteenth birthday. He has, since then, accumulated a record that includes more than a dozen convictions, many of them for quite serious offenses.

It is both notable and commendable that Benton appears to have turned his life around in the last ten years, and is now a married father and responsible small business owner. Nonetheless, Benton's present positive endeavors do not erase his prior experience with the criminal justice system, which tends to show that Benton was intimately familiar with the system and was aware of the ramifications of entering his guilty plea.

Benton now argues that he was confused when he pleaded guilty because he "could not have known that he would be subjected to the ACCA's statutory minimum when he did not know that his conviction for solicitation to commit assault would be counted as a predicate violent felony." (Def.'s Br. at 19.) But it is clear from the record that the district court correctly explained the potential penalties and sentences during the Rule 11 plea colloquy, and that Benton unequivocally stated to the district court that he

understood those penalties. While Benton clearly expressed dissatisfaction and disagreement with the fact that he would be sentenced under the ACCA, there is no indication in the record that he was confused about the implications of his plea or the basis of his sentence enhancement.

Thus, we also weigh this factor against Benton.

### F.     Potential Prejudice to the Government

"[T]he government is not required to establish prejudice that would result from a plea withdrawal, unless and until the defendant advances and establishes a fair and just reason for allowing the withdrawal." *Ellis*, 470 F.3d at 286 (quoting *United States v. Spencer*, 836 F.2d 236, 240 (6th Cir. 1987)). Here, because all preceding factors weigh against Benton, the government is not required to show that it would be prejudiced by withdrawal of the plea.

### G.     Summary

Because all factors weigh against Benton, we find that the district court did not abuse its discretion when it denied Benton's motion to withdraw his guilty plea, as Benton failed to show a fair and just reason why he should be allowed to do so.

## II.     Armed Career Criminal Act Enhancement

We review the district court's determination that an offense constitutes a "violent felony" under the Armed Career Criminal Act *de novo*. *United States v. Gross*, 624 F.3d 309, 322 (6th Cir. 2010) (citing *United States v. Hargrove*, 416 F.3d 486, 494 (6th Cir. 2005)).

"[I]n determining the nature of a defendant's prior conviction, we apply a 'categorical' approach, meaning that we look at the statutory definition of the crime of conviction, not the facts underlying that conviction, to determine the nature of the crime." *United States v. Ford*, 560 F.3d 420, 421-22 (6th Cir. 2009); *see also Taylor v. United States*, 495 U.S. 575, 602 (1990). As an exception, "[i]f it is possible to violate a criminal law in a way that amounts to a crime of violence and in a way that does not,

we may look at the indictment, guilty plea and similar documents to see if they 'necessarily' establish the nature of the prior offense." *Ford*, 560 F.3d at 422 (quoting *Shepard v. United States*, 544 U.S. 13, 26 (2005)).

**A.     Statutory Framework**

The ACCA mandates a fifteen year minimum sentence for a defendant convicted under 18 U.S.C. § 922(g), when that defendant has three or more prior convictions for a "violent felony" or "serious drug offense."   18 U.S.C. § 924(e)(1).   The ACCA provides the following, two-prong definition of "violent felony":

> (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--
>
>> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>>
>> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(2)(B).

Pursuant to Tennessee law, a person commits aggravated assault when he intentionally, knowingly or, in certain cases, recklessly commits an assault[2] and either "[c]auses serious bodily injury to another" or "[u]ses or displays a deadly weapon." Tenn. Code. Ann. § 39-13-102.  Under the Tennessee Code, solicitation of a crime is defined, in relevant part, as follows:

---

[2]A person commits assault who:

> (1) Intentionally, knowingly or recklessly causes bodily injury to another;
> (2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or
> (3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

Tenn. Code Ann. § 39-13-101.

(a) Whoever, by means of oral, written or electronic communication, directly or through another, intentionally commands, requests or hires another to commit a criminal offense, or attempts to command, request or hire another to commit a criminal offense, with the intent that the criminal offense be committed, is guilty of the offense of solicitation.

Tenn. Code Ann. § 39-12-102.

Whether solicitation to commit aggravated assault constitutes a "violent felony" under the ACCA is a question of first impression in this Circuit. It has already been established that the crime of aggravated assault has as an element the use or threat of force, and therefore qualifies as a "violent felony" for ACCA purposes.[3] The initial question we must address, then, is whether solicitation of aggravated assault carries with it the "use of force" element of the greater offense.

### B.     Element of the Use, Attempted Use, or Threatened Use of Physical Force

Benton argues that "all that is required [for solicitation] is some form of communication. As such, it does not meet the narrow definition of 'use, attempted use or threatened use of physical force against another.'" (Def.'s Br. at 23-24.) Furthermore, Benton reasons that "it cannot be said that solicitation is the legal equivalent of aggravated assault," because the Tennessee Code classifies solicitation "as a less serious offense than the actual crime committed." (*Id*. at 24-25.)

The government counters that "[w]hile it is true that [Benton] did not plead to an aggravated assault, the fact that the conviction was for solicitation does not strip the violent nature of the crime, or dispel the fact that . . . force was used against another person which caused serious bodily injury to another." (Pl.'s Br. at 27.)

The government's argument is inconsistent with the categorical approach expounded in *Taylor*. Under this approach, we may only look to the statutory elements of the crime to which the defendant actually pleaded. Therefore, we are barred from

---

[3]*See, e.g., United States v. Matthews*, 278 F.3d 560, 563 (6th Cir. 2002) (holding that reckless aggravated assault counts as a violent felony under the ACCA); *see also Johnson v. United States*,___ U.S. ___, 130 S. Ct. 1265, 1271 (2010) (holding that under the ACCA "the phrase 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person").

considering the individual circumstances of Benton's crime for the purposes of the current inquiry.  Nor can we, in determining whether a conviction was for a "violent felony," favor the originally charged offense over the offense to which Benton eventually pleaded.  *See Taylor*, 495 U.S. at 601-02.)

Under the Tennessee Code, solicitation of a crime is an offense that is distinct from both criminal attempt and conspiracy, and is charged as "an offense two (2) classifications lower than the most serious offense solicited, unless the offense solicited was a Class B or C misdemeanor, in which case the solicitation would not be an offense."  Tenn. Code Ann. § 39-12-107(b).  Solicitation is also distinguished from criminal responsibility, under which theory a defendant may be charged with an offense if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense."  Tenn. Code Ann. § 39-11-402(2).

Because solicitation is distinct from criminal responsibility (and so is not charged as the offense itself) and is considered a lesser offense than the offense solicited, it is apparent that the Tennessee legislature considered solicitation to be both different from, and of a lower degree of criminal culpability than, the offense solicited.  Of course, "whether a prior conviction is a crime of violence is a matter of federal law," not state law, *United States v. Anglin*, 601 F.3d 523, 527 (6th Cir. 2010), and the state legislature's treatment of the law is informative but not dispositive.  Because aggravated assault constitutes a "violent felony", it does not automatically mean that solicitation constitutes the same.

We find that a plain reading of the statutory definition of solicitation to commit aggravated assault yields the conclusion that it does not require as an element "the use, attempted use, or threatened use" of force.  Rather, it has as an element the "command, request or hire" of another to employ such force.  Because the crime of solicitation to commit aggravated assault is at least one step removed from the requisite level of force contemplated in § 924(e)(2)(B)(1) of the ACCA, it does not qualify as a "violent felony" under the first prong of the definition.

**C.     Otherwise Presents a Serious Potential Risk of Physical Injury**

The Supreme Court has explained that the residual clause of the ACCA, § 924(e)(2)(B)(2), is not intended as a catch-all provision. Instead, "the provision's listed examples—burglary, arson, extortion, or crimes involving the use of explosives—illustrate the kinds of crimes that fall within the statute's scope. Their presence indicates that the statute covers only similar crimes, rather than every crime that 'presents a serious potential risk of physical injury to another.'" *Begay v. United States*, 553 U.S. 137, 142 (2008).

Following from this logic, the Supreme Court limited offenses encompassed by § 924(e)(2)(B)(2) to "crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves." *Id.* at 143. Applying this limitation to the facts of *Begay*, the Supreme Court held that "a prior record of DUI [driving under the influence], a strict liability crime, differs from a prior record of violent and aggressive crimes committed intentionally such as arson, burglary, extortion, or crimes involving the use of explosives. The latter are associated with a likelihood of future violent, aggressive, and purposeful 'armed career criminal' behavior in a way that the former are not." *Id.* at 148.

Clearly, whether an offense involves "violent, aggressive, and purposeful" conduct is not the only point of comparison that we may consider when determining whether an offense is similar in kind and degree to the listed examples. *See Id.* at 144. Instead, *Begay* additionally directs us to look to whether the offense "conduct is such that it makes more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim." *Id.* at 145-46.

We have translated *Begay* into a two-part test, which requires that an offense, to be considered a "violent felony" under the second prong of the ACCA, "(1) poses a serious potential risk of physical injury to others; and (2) involves the same kind of purposeful, violent, and aggressive conduct as the enumerated offenses of burglary, arson, extortion, or offenses involving the use of explosives." *United States v. Young*, 580 F.3d 373, 377 (6th Cir. 2009).

Benton argues that "solicitation simply does not involve violent force," and cannot therefore present a risk of physical injury. We disagree. While solicitation to commit aggravated assault may not directly cause physical injury, it does create a heightened and serious potential risk of the occurrence of physical injury. *Cf. Lorillard Tobacco Co. v. Reilly,* 533 U.S. 525, 579 (2001) (Thomas, J., concurring) (identifying "[t]he harm that the State seeks to prevent" in criminalizing solicitation of a crime as "the harm caused by the unlawful activity that is solicited").

Solicitation also involves purposeful conduct, requiring as an element that the perpetrator act "with the intent that the criminal offense be committed." Tenn. Code Ann. § 39-12-102. Because solicitation to commit aggravated assault requires intent that serious bodily injury be caused, or a deadly weapon be used, it also meets the criteria of "violent and aggressive conduct."

Furthermore, solicitation to commit aggravated assault is exactly the kind of conduct that "makes [it] more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim." *See Begay*, 553 U.S. at 146. Because the crime is of the type that may be committed by encouraging the use or brandishing of a gun, it clearly falls within the purview of the types of crimes to which the ACCA was intended to apply.

We therefore hold that the Tennessee state offense of solicitation to commit aggravated assault "involves conduct that presents a serious potential risk of physical injury to another," and "involves the same kind of purposeful, violent and oppressive conduct as the enumerated offenses." It therefore qualifies as a "violent felony" under § 924(e)(2)(B)(2) of the ACCA. *See Young*, 580 F.3d at 377. Thus, we find that the district court did not err when it determined that Benton's prior state conviction for solicitation to commit aggravated assault constituted a "violent felony" under the ACCA.

**CONCLUSION**

The district court did not abuse its discretion when it denied Defendant's motion to withdraw his guilty plea, nor did it err when it determined that the Tennessee state offense of solicitation to commit aggravated assault qualifies as a "violent felony" under the Armed Career Criminal Act.  We hereby **AFFIRM** the decision of the district court.