**NOT RECOMMENDED FOR PUBLICATION**
File Name: 19a0560n.06

**No. 18-5980**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 05, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| EDDIE HARRIS, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: MOORE, McKEAGUE, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Eddie Harris appeals the district court's denial of his motion to suppress; acceptance of his guilty plea; and imposition of his sentence. Finding no merit in these issues, we affirm.

I.

While on probation stemming from two state drug trafficking convictions, defendant Eddie Harris allegedly threatened someone with a shotgun. The individual filed a criminal complaint, and local law enforcement arrested defendant on state criminal charges. When Harris bonded out of jail, he called his probation officer, Michael Roberts. Roberts ordered Harris to report to the probation office the following day to discuss the new charges, but Harris did not appear. At that point, Roberts left a voicemail, ordering Harris to contact him immediately. Harris again failed to comply, so Roberts obtained an arrest warrant.

Roberts then sought backup to help him serve the warrant. He did so because Harris has a violent history—including two murder convictions and two robbery convictions. Eventually, the Kentucky State Police ("KSP") Special Response Team ("SRT") was called in to assist; one of the SRT's duties was executing high-risk warrants. Once the SRT came onboard, a KSP detective applied for and received a search warrant for Harris's residence.

In addition to the search warrant, Harris was subject to *warrantless* searches of his residence based upon reasonable suspicion as a condition of his probation.

The SRT, two KSP troopers, and a probation officer proceeded to Harris's residence with the arrest and search warrants in hand. When they arrived, they attempted to contact defendant through a loudspeaker but were unsuccessful. The SRT then set off flashbangs—devices that produce flashes of light and loud noises—outside the home. The flashbangs provoked a response; a woman later identified as Geraldine Hodge exited the house. Hodge told officers that Harris was in the house, that he was not going to come out, and that he had a shotgun.

The SRT responded by firing canisters of tear gas into the house. A few moments later, Harris crawled out of the house and surrendered. He told officers that there was a shotgun in the bedroom. Once Harris was secured, the officers cleared the building and discovered a shotgun inside.

A federal grand jury indicted Harris on a single count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Thereafter, Harris filed a motion to suppress the shotgun and his incriminating statements. Following an evidentiary hearing, the district court denied defendant's motion, concluding first that his statements had not been induced by officer

questioning[1] and second, that the officers gained reasonable suspicion to conduct a warrantless search of his home when Hodge told the officers that Harris was inside with a shotgun.

Trial began immediately after the suppression hearing, but at the close of the government's case, Harris opted to plead guilty. During the ensuing rearraignment, the district court correctly instructed Harris of the potential penalties he could face under the Armed Career Criminal Act ("ACCA"). At the close of the proceeding, the court accepted Harris's guilty plea.

The court's probation officer then circulated a presentence report, recommending that the district court sentence Harris as an armed career criminal. The presentence report led defendant to move the district court to withdraw his plea. In his motion, he sought to relitigate his motion to suppress but also alleged that his counsel "led [him] to believe that [he] was facing a sentence of approximately 4 years." The district court granted defendant's motion solely because he had not preserved his right to appeal the suppression ruling pursuant to Federal Rule of Criminal Procedure 11(a)(2).

Thus, it appeared that defendant was headed for a second trial. But when the trial date arrived, Harris again elected to plead guilty. A second rearraignment followed, but this time, the district court did not reference the ACCA in its discussion of defendant's sentencing exposure, instead erroneously advising that he faced a maximum of ten years. However, counsel for the government interceded before the district court finished the plea colloquy:

> MS. BRADLEY: Your Honor, I don't want to gum up the works here, but in terms of the penalty, I believe the PSR also addressed the armed career criminal issue, and the penalties could potentially be greater in this case because of that.

The court then clarified that Harris had "a lot of criminal history" and could be facing some "very stiff penalties," but it did not recite the statutory penalties associated with the ACCA.

---

[1]Harris has not appealed this ruling.

After the court finished advising defendant, it asked, "So with respect to the indictment, the charge[ ] in the indictment, do you enter a conditional plea of guilty?" Harris responded, "That's what I thought it was first when I come up there. You know, but the career criminal is off the table." This triggered another discussion of sentencing and the potential applicability of the ACCA, as the district court again clarified that there was "no promise" as to what Harris's sentence would be and that it did not know if Harris was an armed career criminal or not. After doing so, the court asked if Harris wanted to plead guilty, and Harris responded, "Yes, let's do it." The court accepted the guilty plea.

At sentencing, Harris objected to the presentence report because he did not believe that either of his robbery convictions were ACCA predicate offenses, leaving him one conviction short of qualifying as an armed career criminal. The court overruled Harris's objections and imposed a sentence of fifteen years—the mandatory minimum under the ACCA. Harris timely appealed.

II.

First, Harris appeals the district court's denial of his motion to suppress the shotgun. "When reviewing a district court's ruling on a motion to suppress, we will reverse findings of fact only if they are clearly erroneous. Legal conclusions as to the existence of probable cause are reviewed de novo. When the district court has denied the motion to suppress, we review all evidence in a light most favorable to the Government." *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006) (brackets, internal citations and quotation marks omitted).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. Defendant argues that the search warrant obtained by the KSP was invalid because it contained

false statements and because it did not establish probable cause, so his Fourth Amendment rights were violated when the officers used it to search his home.[2] But we need not address this argument because, even assuming that the search warrant was invalid, Harris's Fourth Amendment rights were not violated.

Defendant was subject to *warrantless* searches upon reasonable suspicion as a condition of his probation. And here, the officers possessed reasonable suspicion that criminal activity was afoot when they learned from Hodge that Harris was inside the residence loading a shotgun—an item Harris could not possess as a felon. Therefore, their search of Harris's residence "was reasonable within the meaning of the Fourth Amendment." *United States v. Knights*, 534 U.S. 112, 122 (2001). We thus affirm the district court's denial of Harris's motion to suppress.

III.

Next, defendant claims that his plea was invalid because the district court failed to explain the statutory penalties associated with the ACCA during his second rearraignment and plea colloquy. "For a plea to be voluntary, the defendant must understand the direct consequences of a plea, which includes the maximum and minimum sentences that may be imposed." *United States v. Martin*, 668 F.3d 787, 792 (6th Cir. 2012). This claim is subject to plain error review because Harris did not object below, meaning that he bears the burden of establishing "that there is (1) error, (2) that is plain, and (3) that affects [his] substantial rights." *United States* v. *Lalonde*, 509 F.3d 750, 757 (6th Cir. 2007). Once these three conditions are met, the court "may exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity,

---

[2]Harris changed course at oral argument, where he claimed for the first time that the officers' use of flashbangs constituted an unlawful search. Because Harris failed to preserve this novel argument, we decline to address it. *See United States v. Graham*, 484 F.3d 413, 418 (6th Cir. 2007)

or reputation of judicial proceedings." *Id.* at 757–58 (citation omitted). Because the government concedes the first two elements, our inquiry begins with whether Harris's substantial rights were violated by the district court's failure to advise Harris of the statutory penalties associated with the ACCA. *Id.*; *see also United States v. Monie*, 858 F.3d 1029, 1032–34 (6th Cir. 2017).

Harris relies on *Monie*, where we concluded that a defendant's substantial rights were violated when the district court advised him that he faced a maximum sentence of ten years' imprisonment, despite the potential application of the ACCA. 858 F.3d at 1034. We reached this conclusion because the defendant: (1) did not receive pre-plea notice of the mandatory-minimum sentence under the ACCA; and (2) had also demonstrated that, but-for the erroneous advice, he would not have pleaded guilty because he took another count that subjected him to a mandatory-minimum sentence to trial. *Id.* at 1032–33. Neither of these rationales apply to Harris.

First, defendant received ample pre-plea notice of the statutory penalties. Critically, the district court advised defendant of those penalties during the first rearraignment and plea colloquy, and Harris confirmed that he understood the penalties he faced. Additionally, counsel for the government interceded at the second rearraignment when the district court omitted the consequences of the ACCA, which prompted the court to again remind Harris that it did not know whether Harris would qualify as an armed career criminal, and that he could face "stiff penalties" based on his criminal history. By this time, Harris had already filed pro se objections to the presentence report, specifically challenging his designation as an armed career criminal, so he clearly understood the consequences of his plea. And finally, while Harris did venture that "the career criminal [was] off the table," he was promptly corrected by the court, which informed him that it did not know whether he qualified as an armed career criminal. In sum, Harris had adequate notice of his sentencing exposure, such that he "reasonably could be said to have understood the

consequences of his plea," despite the omission of the ACCA penalties by the district court. *United States v. Hogg*, 723 F.3d 730, 745 (6th Cir. 2013) (citation omitted).

Second, Harris has not demonstrated that he would have proceeded to trial but for the district court's erroneous advice. It is much the opposite: Defendant had already once been properly advised of the statutory penalties, and he had elected to plead guilty. He ultimately withdrew this plea—because he failed to preserve his right to appeal the district court's ruling on his motion to suppress—but he stated at the time of his plea that he understood the criminal penalties he faced and wanted to plead guilty. Moreover, Harris never claimed to be innocent; he instead admitted to possessing the shotgun multiple times in open court during the process of rearraignment. Accordingly, Harris has not demonstrated that he would have proceeded to trial if the district court had advised him of the ACCA penalties a second time.

For these reasons, we hold that Harris's substantial rights were not violated, so our review of this issue ends here.

IV.

Finally, Harris appeals his sentence. The ACCA imposes a mandatory minimum sentence of fifteen years for a conviction under 18 U.S.C. § 922(g) if a defendant has three or more previous convictions for "violent felon[ies]." § 924(e)(1). Harris contends that the district court erred by finding that he had three qualifying violent felonies. It is undisputed that Harris's two murder convictions qualify as ACCA predicate offenses. However, he argues that neither of his robbery convictions qualify as violent felonies, leaving him one offense short of qualifying as an armed career criminal. We review this claim de novo. *United States v. Benton*, 639 F.3d 723, 729 (6th Cir. 2011).

Violent felonies are determined either by the use of force clause or the enumerated offense clause. *See United States v. Elliott*, 757 F.3d 492, 493–94 (6th Cir. 2014); 18 U.S.C. § 924(e)(2)(B). Robbery is not an enumerated offense, so the only way that either of Harris's convictions could qualify as a violent felony under the ACCA is if it has "as an element the use, attempted use, or threatened use of physical force against the person of another." § 924(e)(2)(B)(i). To determine whether a crime qualifies as a violent felony, courts use the categorical approach by looking at the elements of the crime, not at the underlying facts of how the defendant committed the crime. *Taylor v. United States*, 495 U.S. 575, 600 (1990).

Here, one of Harris's two robbery convictions was for "armed robbery or burglary" under then-Kentucky Revised Statute § 433.140:

> Any person who commits robbery or burglary . . . and in committing the act uses or displays any pistol, gun, or other firearm or deadly weapon[.]

Defendant contends that the statute could be violated by committing a robbery with a toy gun, or even by a person demanding money with their hand hidden inside their jacket to bluff the victim into believing the robber possessed a gun. He therefore claims that § 433.140 is categorically overbroad, and thus it cannot be a violent felony under the use of force clause.

Even assuming Harris's interpretation of Kentucky law is correct, § 433.140 is still a violent felony. In *United States v. Gloss*, we held that "[a]ny robbery accomplished with a real or disguised deadly weapon . . . falls under the [use of force] clause . . . as it necessarily involves the use, attempted use, or threatened use of physical force against the person of another." 661 F.3d 317, 319 (6th Cir. 2011) (internal quotations omitted). *Gloss* thus forecloses defendant's argument because inherent within "us[ing] or display[ing]" a deadly weapon is the threatened use of violent force. *Id.*; § 433.140. Accordingly, Harris's conviction under § 433.140 qualifies as a violent

felony, which means that he has three qualifying ACCA predicate offenses, and the district court properly sentenced him as an armed career criminal.[3]

V.

For these reasons, we affirm the judgment of the district court.

---

[3]In light of our conclusion that § 433.140 is a violent felony, we need not address whether Harris's second robbery conviction under Kentucky Revised Statute § 515.030(1) also qualifies as a violent felony for purposes of the ACCA.