NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0564n.06

No. 25-5106

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Dec 08, 2025

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| CARALE SHIELDS, | ) | TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: McKEAGUE, GRIFFIN, and MATHIS, Circuit Judges.

PER CURIAM. Carale Shields appeals the district court's denial of his motion to withdraw his guilty plea. As discussed below, we affirm.

In 2019, a federal grand jury returned an indictment charging Shields and ten other defendants in connection with a methamphetamine conspiracy. A superseding indictment named Shields in three counts: conspiring to distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1); aiding and abetting distribution and possession with intent to distribute methamphetamine, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1) (Count 2); and being a felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 11).

Shortly before the scheduled trial date, Shields moved to set the case for a change-of-plea hearing. Shields subsequently entered into a plea agreement with the government, agreeing to plead guilty to Count 2 in exchange for the government's dismissal of the remaining counts. The parties agreed to a 120-month prison sentence pursuant to Federal Rule of Criminal Procedure

11(c)(1)(C). The district court accepted Shields's guilty plea but later, at sentencing, rejected the plea agreement and reset the case for trial.

On the day of trial, Shields again pleaded guilty to Count 2. This time, the parties' Rule 11(c)(1)(C) plea agreement provided for a 165-month prison sentence. During the change-of-plea hearing, the district court reviewed the terms of the agreement with Shields. Ultimately, the court found that Shields was competent to enter a plea, that the plea was made knowingly and voluntarily, and that there was a sufficient factual basis supporting the plea. The court thus accepted Shield's plea and set the matter for sentencing. Relevant to this appeal, the plea agreement states, "The parties believe that the defendant is a Career Offender pursuant to USSG § 4B1.1. If the defendant is not a Career Offender th[e]n both parties may withdraw from the plea agreement."

Nine weeks later, Shields moved to withdraw his guilty plea. Shields also asked the court to appoint him new counsel. On his scheduled sentencing date, the district court allowed his counsel to withdraw, denied his motion to withdraw his guilty plea, and rescheduled his sentencing hearing. Five months later, Shields, through new counsel, renewed his motion to withdraw his guilty plea. The district court denied his renewed motion after determining that Shields failed to show a "fair and just reason" for withdrawing his guilty plea.

At sentencing, the district court found Shields to be a career offender under USSG § 4B1.1 and calculated his guidelines range as 188 to 235 months of imprisonment based on a total offense level of 31 and a criminal history category of VI. After considering the sentencing factors under 18 U.S.C. § 3553(a), the district court accepted the Rule 11(c)(1)(C) plea agreement and sentenced Shields to 165 months of imprisonment followed by three years of supervised release.

This timely appeal followed. Shields argues that (1) his guilty plea was involuntary because, under the totality of the circumstances, it was unknowingly and involuntarily made and (2) the district court abused its discretion by denying his motion to withdraw his guilty plea.

### 1. Guilty Plea

We review de novo the validity of Shields's guilty plea. *See United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007). A guilty plea is valid if it is voluntary, knowing, and intelligent. *Brady v. United States*, 397 U.S. 742, 748 (1970); *Dixon*, 479 F.3d at 434. "The validity of a guilty plea is assessed by reviewing the totality of the circumstances surrounding the plea." *United States v. Hockenberry*, 730 F.3d 645, 662 (6th Cir. 2013) (quoting *United States v. Young Ko*, 485 F. App'x 102, 104 (6th Cir. 2012) (per curiam)). For a guilty plea to be valid, "[t]he defendant must have a 'sufficient awareness of the relevant circumstances and likely consequences'" of the plea. *Id.* (quoting *Brady*, 397 U.S. at 748).

Shields argues that his guilty plea was unknowingly and unintelligently entered because of significant misunderstandings he had at the time of his plea. According to Shields, he believed that his guilty plea had not been finally accepted. His confusion arose, he argues, from his colloquy during the second plea hearing where the district court discussed the consequences of it accepting or rejecting the Rule 11(c)(1)(C) plea agreement. *See* Fed. R. Crim. P. 11(c)(3)(A). At the conclusion of the second plea hearing, however, the district court stated, "So, Mr. Shields, I'm going to accept your plea of guilty to Count 2 of [the] superseding indictment." And that same day, the district court entered an order stating that it had accepted his guilty plea.

Shields also contends that he was confused about "exactly what conduct to which he was pleading," the application of the sentencing guidelines, and the process for preparing the presentence report. During the second plea hearing, the district court reviewed the stipulated

factual basis attached to the plea agreement, and Shields ultimately agreed that he possessed and sold methamphetamine by affirming the statement that an individual told the FBI about obtaining methamphetamine from Shields on at least three occasions in 2017. Shields asserts that he believed that his guidelines range would be based solely on the 42.57 grams of methamphetamine he sold to this individual. But the plea agreement did not provide that Shields's guidelines range would be based on a specific drug quantity. Rather, the plea agreement reflected the parties' understanding that Shields qualified as a career offender under USSG § 4B1.1. Contrary to that agreement, Shields now contends that he believed neither his juvenile drug convictions nor his adult drug convictions qualified as "controlled substance offenses" for career offender purposes.

Yet Shield's purported confusion is belied by the fact that he had already underwent the presentence investigation process during his first plea proceeding. After Shields's first plea hearing, the probation office prepared a draft presentence report, which held him responsible for 5,443.2 grams of methamphetamine and found him to be a career offender based on his five prior drug convictions, including two convictions for offenses committed while a juvenile. Shields filed objections to the draft presentence report, including objections to the type and quantity of drugs attributed to him, but did not object to the determination that he qualified as a career offender.

Furthermore, during the second plea hearing, the district court confirmed that Shields was familiar with the sentencing guidelines and noted that a presentence report had already been prepared. The district court also addressed the provision of the plea agreement reflecting the parties' belief that Shields qualified as a career offender. Shields confirmed that he understood this provision.

Shields further contends that "he implied his appointed counsel was inadequate." During the second plea hearing, Shields stated that he was "not fully satisfied" with his attorney but that

he was "willing to accept the plea agreement." The district court questioned Shields about his concerns with his counsel. After the district court and his counsel addressed those concerns, Shields stated that he was "ready to proceed" with pleading guilty.

The record demonstrates that the district court complied with Rule 11 in conducting the second plea hearing and that, under the totality of the circumstances, Shields was aware of "the relevant circumstances and likely consequences" of his guilty plea. *Brady*, 397 U.S. at 748. Shields has failed to show that his guilty plea was not voluntary, knowing, and intelligent.

### 2.    **Motion to Withdraw Guilty Plea**

We review the district court's denial of Shields's motion to withdraw his guilty plea for an abuse of discretion. *See United States v. Catchings*, 708 F.3d 710, 717 (6th Cir. 2013). "A district court abuses its discretion where 'it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard.'" *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008) (quoting *United States v. Spikes,* 158 F.3d 913, 927 (6th Cir.1998)).

Under Rule 11(d)(2), a defendant may withdraw a guilty plea after the district court accepts the plea but before it imposes sentence if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The purpose of this rule "is to allow a 'hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.'" *Dixon*, 479 F.3d at 436 (quoting *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991)). In determining whether a defendant has shown a "fair and just reason" for withdrawal, we consider the totality of the circumstances, including the following non-exclusive factors:

(1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Catchings*, 708 F.3d at 717-18 (quoting *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994)).

*Length of Delay:* Shields first moved to withdraw his guilty plea nine weeks after his second guilty plea. We have "declined to allow plea withdrawal when intervening time periods were as brief as one month." *United States v. Benton*, 639 F.3d 723, 727 (6th Cir. 2011); *see also United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (affirming denial of motion to withdraw guilty plea where 67 days elapsed between plea and motion to withdraw plea).

*Reason for Delay:* In his first motion to withdraw his guilty plea, Shields asserted that he had contacted his counsel's office "several weeks ago" and that his counsel "recently had the opportunity to speak with" him about moving to withdraw his guilty plea. But Shields still waited—at best—"several weeks" before even indicating to his former counsel an intent to withdraw his guilty plea and "[a] lack of communication with counsel alone . . . is insufficient justification for a delay." *United States v. Martin*, 668 F.3d 787, 795 (6th Cir. 2012).

In his renewed motion, Shields argued that he did not believe that "time was of the essence" because he believed that he could withdraw his guilty plea for two reasons: (1) the district court had not accepted the plea and (2) he was not a career offender. Under Rule 11(d)(1), a defendant may withdraw a guilty plea before the district court accepts the plea "for any reason or no reason." But as discussed above, Shields's purported belief that his guilty plea had not been accepted was baseless given that the district court said that it had accepted his guilty plea and then later entered

an order stating that it had accepted his guilty plea. Shields further asserted that he believed he could withdraw his guilty plea because the plea agreement provided that both parties could withdraw from the plea agreement if Shields did not qualify as a career offender. But the plea agreement states, "[t]he parties believe that defendant is a Career Offender pursuant to USSG § 4B1.1," and Shields affirmed that he understood this provision during his plea colloquy. Shields's claimed belief that he was not a career offender conflicts with both the plea agreement and the draft presentence report.

*Asserting or Maintaining Innocence:* Shields did not maintain his innocence. In fact, Shields twice pleaded guilty to Count 2 of the superseding indictment. "Statements of guilt under oath at a plea hearing support the district judge's decision not to permit withdrawal." *Martin*, 668 F.3d at 796; *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006) ("When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." (quoting *United States v. Morrison*, 967 F.2d 264, 268 (8th Cir. 1992))).

*Circumstances Underlying Guilty Plea:* With respect to the circumstances underlying the entry of his guilty plea, Shields raised the same misunderstandings that he raises on appeal about the validity of his guilty plea. As addressed above, those misunderstandings lacked support. At the second plea hearing, the district court conducted a thorough Rule 11 plea colloquy, confirming that Shields understood his constitutional rights, the nature of the charge to which he was pleading guilty, the consequences of his guilty plea, the terms of the plea agreement, and the factual basis for his guilty plea. When Shields expressed dissatisfaction with his counsel and raised questions about the factual basis for the plea, the district court addressed his concerns. Shields then

confirmed that he was satisfied with the court's explanation and with his attorney's representation. Shields chose to plead guilty and he did so "freely and voluntarily."

*Nature and Background:* In support of his motion to withdraw his guilty plea, Shields asserted that his "untreated diagnosis of adjustment disorder with mixed disturbance of emotions and conduct may be the source of [his] confusion" about "how to understand and respond to his current legal situation." During the second plea hearing, Shields, in response to the district court's questions, stated that he was 44 years old and that he had recently obtained his GED. Shields asserted that he had received a psychological evaluation nearly 30 years ago when he was a juvenile but that he had never been treated for any mental health issues. The district court confirmed that was aware that he was pleading guilty and understood the consequences of doing so.

*Prior Experience with Criminal Justice System:* Shields acknowledged that he had a lengthy history in the state criminal justice system but asserted that he had no prior experience with the federal system. Although this was his first federal case, Shields's criminal history in the state courts spanned four decades, beginning when he was 13 years old, and included over two dozen juvenile adjudications and adult convictions. *See United States v. Lewis*, 800 F. App'x 353, 359 (6th Cir. 2020) (rejecting the defendant's argument that this factor "weigh[s] in his favor because he has only dealt with the state criminal justice system").

*Potential Prejudice to Government:* The district court did not address whether granting Shields's motion to withdraw his guilty plea would prejudice the government. But if a defendant is unable to establish a fair and just reason for withdrawal, "it is not necessary for the Court to consider prejudice to the Government." *Hockenberry*, 730 F.3d at 662.

The district court concluded that the balance of the *Bashara* factors strongly weighed against Shields's request to withdraw his guilty plea. The record supports the district court's conclusion and its determination that Shields's decision to plead guilty on the day of trial was a tactical choice. Shields has failed to show that the district court abused its discretion in denying his motion to withdraw his guilty plea.

For these reasons, we **AFFIRM** the district court's judgment.